IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON GIOTTONINI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THERMA-WAVE, LTD EMPLOYEE BENEFITS PLAN,<br><br>　　　　Defendant.<br>_____<br>HARTFORD LIFE GROUP INSURANCE COMPANY,<br><br>　　　　Real Party in Interest<br>_____/ | No. C 06-7591 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the November 16, 2007 hearing. Having considered the papers submitted, and for the reasons set forth below, the Court GRANTS summary judgment in favor of defendant.

**BACKGROUND**

Plaintiff Sharon Giottonini, age 61, was employed as a Senior Staff Accountant at defendant Therma-Wave, Inc. from November 22, 1999 through May 9, 2005, and was covered under defendant's long term disability plan, which was insured by a policy issued by Hartford Group Insurance Company. The policy provides long-term disability benefits in the event a person becomes "disabled." Under the

policy, the term "disability or disabled" means that:

> during the Elimination Period and for the next 24 months you are prevented by:
> 1. accidental bodily injury;
> 2. sickness;
> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. pregnancy,
>
> from performing one or more of the essential duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability earnings.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that you are Disabled.

Declaration of Valerie Gay ¶ 2, Ex. A, POL029. The policy defines an "Essential Duty" as a duty that: "(1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be easily omitted or changed." *Id.* For someone who is disabled before they turn 63, the plan provides for coverage until that person reaches normal retirement age, which in the case of the plaintiff is 66. *See id.,* POL018. The policy grants Hartford discretion to interpret its terms and conditions and determine eligibility for benefits as follows:

> **Who interprets policy terms and conditions?**
> We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

*Id.*, POL045.

Following a shoulder surgery in May 2005, plaintiff stopped working and received disability benefits from August 8, 2005 through February 14, 2006. Gay Decl. ¶ 3, Ex. B, AR228-29. She expected to return to work on November 15, 2005. *Id.*, AR229. In support of her claim, plaintiff submitted an Attending Physician Statement, completed by her orthopedic surgeon, Dr. David Bell. *Id.*, AR223-24. Dr. Bell reported that plaintiff was recovering from rotator cuff surgery, and that she could not work until November 15, 2005. *Id.* On October 27, 2005 plaintiff notified Hartford she was receiving injections from Dr. Robert Bruce Miller, a physical medicine and rehabilitation specialist referred by Dr. Bell. *Id.*, FN021, AR139. She remained hopeful she would return to work on November 15, 2005. *Id.*, FN021. She visited Dr. Miller several times in October and November 2005 for trigger point injections, and consistently reported improvement. *Id.*, AR139-156. However, on November 9,

plaintiff reported a flare up of pain, which she attributed to increased driving activities. *Id.*, AR145. On November 29, 2005, plaintiff stated via telephone to Hartford that she had not returned to work and represented that Dr. Bell wanted her to remain off work through February 15, 2006. *Id.*, FN018. In December 2005, she reported seeing a neurosurgeon, Dr. Desmond Erasmus, who opined that her neck was not involved with her symptoms. *Id.*, FN012, FN009. Thereafter, on January 14, 2006, Hartford notified plaintiff that her claim for long term disability benefits had been approved effective August 8, 2005 through February 14, 2006, noting that her physician had released her to return to work on February 15, 2006. *Id.*, AR133-136.

Nevertheless, plaintiff did not return to work on February 15, 2006. On March 8, Dr. Bell completed an Attending Physician's Statement of Continued Disability and a Physical Capacities Evaluation Form. *Id.*, AR128-131. Dr. Bell reported that plaintiff could sit, stand, and walk for eight hours at a time, and could perform fingering and handling activities "frequently (34-67%)," and she could also drive frequently. *Id.* However, he reported that she should not lift, carry, push, or pull more than eleven pounds, she should not climb or crawl, and she should not lift above her shoulder. *Id.*

Following receipt of Dr. Bell's restrictions and limitations on March 31, 2006, Hartford performed an Occupational Analysis. *Id.*, FN004-005. The Occupational Analysis found that plaintiff's occupation as an accountant, as recognized in the general workplace, requires only occasional reaching and handling and frequent fingering, and that this, in combination with Dr. Bell's March 8, 2006 report, "would indicate that [the employee's restrictions and limitations] do not prevent her from performing her [occupation]." *Id.*

On the record before it, Hartford informed plaintiff on April 5, 2006 that her disability benefits were terminated effective February 14, 2006. *Id.*, AR123-127. Plaintiff appealed the decision in a letter dated April 23, 2006, which Hartford received on May 2, 2006. *Id.*, AR112-113. Plaintiff agreed that Hartford's "description of accounting duties was accurate" and that her occupation "is primarily sedentary and requires a great deal of keyboarding and writing." *Id.* She attached a form completed by Dr. Bell, dated April 19, 2006, which purported to revise his March 8, 2006 determination that plaintiff could tolerate sitting for eight hours at a time. *Id.* Dr. Bell's April 19, 2006 assessment was that plaintiff could return to work so long as she sat for no more than two to four hours at a time. *Id.*

Hartford received medical records from Dr. Bell on June 20, 2006, and records from Dr. Miller in mid-July, 2006. *Id.*, AR91-97; 50-87. While Dr. Bell did revise downward plaintiff's sitting restriction on April 18, 2006, he did so after plaintiff received Hardford's letter terminating benefits. *Id.*, at 96. Dr. Bell stated in his notes reflecting plaintiff's April 19, 2006 office visit that he and the plaintiff "discussed her physical limitations and revised them on a piece of paper that we gave the patient that she can provide to her insurance company that would limit her sitting for less that four hours and limit her fingering." *Id.* Dr. Bell did not state he performed on any objective tests, but indicates he instead discussed plaintiff's subjective symptoms and addressed "some questions about her work status." *Id.* On April 6, 2006 Dr. Miller noted that plaintiff was not doing her icing technique which was [sic.] she was advised previously." *Id.*, AR054. On April 20, 2006 Dr. Miller opined that any carpal tunnel syndrome symptoms plaintiff was experiencing were due to frequent, repetitive gardening activities, and not keyboarding. *Id.*, AR052.

On July 20, 2006, Hartford received an independent medical records review it had requested from Dr. Francis X. Plunkett, who is board-certified in orthopedic surgery. *Id.*, AR37-42. As part of his independent review, Dr. Plunkett attempted to contact Dr. Bell without success, and reviewed numerous documents including those relating to the plaintiff's visits with Dr. Bell and Dr. Miller. *Id.* Dr. Plunkett noted that plaintiff had ongoing subjective complaints regarding her neck and upper extremities, but that there was nothing from an objective point of view that would precluding her from performing her regular job activity as an accountant. *Id.* Plaintiff appealed Hartford's decision, and the parties now both move for summary judgment.

**LEGAL STANDARD**

The Ninth Circuit has explained that where an ERISA plan grants discretion to a plan administrator, courts review the plan's decisions for abuse of discretion, but that such review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (en banc) (overruling *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1323 (9th Cir. 1995) (requiring a

4

plan participant to present "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary")); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Following *Abatie*, "plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary." *Id.* at 969. Under the *Abatie* standard:

> The level of skepticism with which a court reviews a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of the evidence in the record.

*Id.* at 968-69 (internal citations and quotations omitted). "What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Id.*

**DISCUSSION**

The parties agree that a structural conflict exists here because Hartford both funded benefits and administered claims under the policy. The dispute is over only whether Hartford adequately investigated plaintiff's claim, and whether it failed to credit plaintiff's reliable evidence. Specifically, plaintiff asserts that "[t]he major dispute centers over [sic] a paper review of the medical records done for Hartford by a Dr. F. X. Plunkett who (1) rejected consideration of anything other than "objective" evidence and (2) does not appear to have reviewed all of the records." Plaintiff's Cross-Motion for Sum. J. at 2.

Plaintiff contends that Hartford arbitrarily denied benefits by refusing to consider plaintiff's "subjective" medical symptoms to prove disability. She faults Hartford for failing to actually examine plaintiff, and instead relying on a paper review done by Dr. Plunkett. Specifically, plaintiff asserts that Dr. Plunkett failed to discuss her case with Dr. Bell, and failed to indicate in his report whether he

5

1 reviewed Dr. Miller's records and reports. She also asserts that defendant arbitrarily denied benefits
2 by refusing to consider her "subjective" medical symptoms to prove disability.[1] In support of her
3 contention, plaintiff fails to cite to any authority, but merely reproduces in her brief portions of the
4 record relied on by defendant (often without referencing the page number).

5 Defendant contends that its determination was reasonable based on a review of the "whole
6 record," which includes all of the subjective evidence plaintiff cites in her briefs. Indeed, Dr. Plunkett
7 specifically noted that plaintiff had ongoing subjective complaints, but that, based on the record as a
8 whole, he found "nothing of an objective standpoint that would preclude her from performing regular
9 activities." Gay Decl. ¶ 3, Ex. B, AR038. Defendant further contends that, contrary to plaintiff's
10 assertion, Dr. Plunkett attempted to contact Dr. Bell twice as part of his review (the record actually
11 shows he made three attempts). *Id.*, AR038-39. Defendant also states that Dr. Plunkett did in fact
12 review Dr. Miller's records, although he received them toward the end of his review. *Id.*, AR041.
13 Defendant contends that its decision was reasonable and was within the discretion granted to it by the
14 express terms of the policy. Defendant argues that the record contains no evidence of malice, self-
15 dealing, or a parsimonious claims-granting history, and that Hartford provided consistent reasons for
16 the denial of benefits, adequately investigated plaintiff's claim, and analyzed the evidence. Defendant
17 further asserts that the medical records and opinions of plaintiff's doctors showed she was improving,
18 and that it was not until her benefits were terminated that plaintiff was suddenly unable to sit for more
19 than four hours a day. Defendant asserts that Hartford was entitled to rely on the opinion of an
20 independent physician, and that the Court should give deference to Hartford's decision.

21 Defendant relies primarily on *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005), for the

---

[1] Plaintiff also asks the Court to apply a standard developed in the context of Social Security Administration cases for evaluating "excess pain." While plaintiff admits that the Social Security standard is not ordinarily applied in ERISA cases, she urges the Court to apply it anyway. She cites numerous cases, including *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005), for the proposition that "[d]isability decisions by Administrative Law Judges and by the Social Security Administration are relevant evidence of disability in ERISA cases, and they ought to be considered both by Plan Administrators and by Courts reviewing ERISA Plan decisions." Pl's mo. at 9. However, plaintiff also states that "she was denied Social Security disability benefits." *Id.* at 14. The Court notes that the rules for determining Social Security benefits and ERISA benefits are different, and that, in any event, plaintiff's ERISA case would not be aided by the fact that her Social Security benefit claim was denied.

1 proposition that an ERISA administrator abuses its discretion only if it (1) renders a decision without 2 explanation, (2) construes provision of the plan in a way that conflicts with the plain language of the 3 plan, or (3) relies on clearly erroneous findings of fact. "A finding is 'clearly erroneous' when although 4 there is evidence to support it, the reviewing 'body' on the entire evidence is left with the definite and 5 firm conviction that a mistake has been committed." *Id.* "In the ERISA context, even decisions directly 6 contrary to the evidence in the record do not necessarily amount to an abuse of discretion." *Id.*

7 Defendant contends that Hartford did not abuse its discretion because it explained its decision 8 to plaintiff, its explanation was consistent with the plain language of the policy, and it did not rely on 9 any erroneous findings of fact. The Court has reviewed the record and agrees. Defendant relied on the 10 judgment of plaintiff's physicians, as well as Dr. Plunkett's independent review, in determining that 11 plaintiff was able to perform her occupation, and was thus not entitled to long term disability benefits. 12 Hartford's explanation for terminating plaintiff's benefits was consistent. The record reflects a 13 meaningful dialogue between Hartford and plaintiff that lasted for the better part of a year, during which 14 plaintiff had many opportunities to present evidence. Ultimately the evidence she and her doctors 15 provided supported Hartford's reasonable decision to terminate plaintiff's benefits. Plaintiff did not 16 point to any evidence—and the Court found none—of procedural irregularities, evidence of malice, or 17 divergence from the policy's plain language that would permit it to find that Hartford had abused its 18 discretion in this case. *See Jordan v. Northrup Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 19 875 (9th Cir. 2004) ("In the ERISA context, even decisions directly contrary to the evidence in the 20 record do not necessarily amount to an abuse of discretion."); *Estate of Shockley v. Alyeska Pipeline* 21 *Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997) (under the abuse of discretion standard, an ERISA plan 22 administrator's decision should be upheld if it is based upon a reasonable interpretation of the plan's 23 terms and was made in good faith).

24 Ultimately, while plaintiff contends that Hartford failed to consider "subjective" evidence of her 25 disability, the record shows that Hartford did consider that subjective evidence, but chose to give greater 26 weight to the objective evidence before it. The Court finds it was within Hartford's discretion to do so.

27
28 **CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby enters summary judgment in favor of defendant and against plaintiff. (Docket Nos. 13 and 17). The Court holds that Hartford did not abuse its discretion when it terminated plaintiff's disability benefits effective February 14, 2006.

**IT IS SO ORDERED.**

Dated: November 15, 2007

SUSAN ILLSTON
United States District Judge